COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Kelsey and Senior Judge Annunziata
Argued at Alexandria, Virginia


DAVID IRVING ROSEDALE
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2414-07-4                 JUDGE JEAN HARRISON CLEMENTS
                                                         JULY 22, 2008
PAMELA JOY ROSEDALE


                FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                           Gordon F. Willis, Judge

               Nicholas A. Pappas for appellant.

               Pamela J. Rosedale, *pro se*.


        David Irving Rosedale (husband) appeals from the final decree of divorce entered by the

Circuit Court of Stafford County (trial court) on September 10, 2007.  On appeal, husband

contends the trial court erred in (1) awarding Pamela Joy Rosedale (wife) more than 50% of the

present value of his 401(K) account, (2) awarding wife 65% of the overall value of the marital

property, (3) classifying a sailboat titled in his name as marital property, (4) awarding wife

permanent spousal support in the amount of $3,110 per month, and (5) failing to order the return

of the cash bond he posted for his appeal to the trial court.  For the reasons that follow, we affirm

the trial court's judgment in part, reverse the trial court's judgment in part, and remand for

further proceedings consistent with this opinion.

        As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. PROCEDURAL BACKGROUND

The parties were married in July 1992. One child was born of the marriage in November 1992. On February 3, 2005, wife filed for divorce and requested, *inter alia*, that the court make an equitable distribution of the parties' marital assets and award her permanent spousal support.

The trial court conducted an evidentiary hearing on those issues on April 27 and May 25, 2007. The issue of child support was also before the trial court on husband's appeal from the juvenile and domestic relations district court. Following the presentation of evidence, the parties submitted their closing arguments in writing.

On August 15, 2007, the trial court issued a letter opinion finding that the parties' marital residence, husband's Fidelity 401(K) account, wife's 2002 Jetta automobile, and husband's Hunter sailboat were wholly marital assets subject to distribution. After considering the factors set forth in Code § 20-107.3(E), the trial court determined that wife was entitled to 65% of the overall value of the marital property. Finding the evidence presented was insufficient to establish the equity value of the marital residence, the trial court ordered that the residence be sold, with 65% of the net proceeds going to wife and 35% of the net proceeds going to husband. The trial court also found that, as of the date of the hearing, husband's 401(K) account had a present value of $77,551.99 and the sailboat and Jetta had equity values of $22,505 and $1,569, respectively.

The court then divided the marital property and ordered husband to pay a monetary award to wife as follows:

> [Wife] shall retain ownership of the 2002 Jetta vehicle, which is already solely titled in her name and in return [husband] will receive a credit of $549.15 (35% of $1569.00) towards any lump sum payment he is required to pay to [wife].
> [Husband] shall retain ownership of the 34 foot Hunter Sailboat which is already solely titled in his name and in return, he

shall pay to [wife] $14,628.25 (65% of $22,50[5].00) as part of the lump sum award made herein.

[Husband] shall also retain sole ownership of his 401(K) plan with Fidelity Investments and in return he shall pay to [wife] $50,408.79 (65% of $77,551.99) as part of the lump sum award made herein.

Taking into account the above division of the marital property, [wife] is awarded a lump sum award against [husband] in the amount of $64,487.89 ($50,408.79 + $14,628.25 - $549.15) payable within 60 days of the entry of the final decree.

After considering the factors set forth in Code § 20-107.1, the trial court also awarded wife permanent spousal support in the amount of $3,110 per month. The court further ordered husband to pay $629 per month in child support and noted in its letter opinion as follows: "By its rulings herein, the Court has effectively dealt with all of the issues raised by [husband] in his appeal to this Court from the prior rulings of the Stafford JDR Court."

The trial court entered a final decree of divorce incorporating its letter opinion on September 10, 2007, and this appeal followed.

## II. EQUITABLE DISTRIBUTION

On appeal, husband challenges the trial court's equitable distribution of the Fidelity 401(K) account, the overall value of the marital property, and the Hunter sailboat.

"In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one." Shackelford v. Shackelford, 39 Va. App. 201, 210, 571 S.E.2d 917, 921 (2002). The trial court "must classify the property, assign a value, and then distribute the property to the parties, taking into consideration the factors listed in Code § 20-107.3(E)." Theismann v. Theismann, 22 Va. App. 557, 564, 471 S.E.2d 809, 812, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). "Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

- 3 -

Moreover, in reviewing the trial court's equitable distribution award, we view the evidence and all reasonable inferences flowing from the evidence in the light most favorable to wife as the party prevailing below. Thomas v. Thomas, 40 Va. App. 639, 642, 580 S.E.2d 503, 504 (2003). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Id. at 644, 580 S.E.2d at 505.

A.  Distribution of Husband's 401(K) Account

Husband contends the trial court erred in awarding wife more than half of the present value of the marital share of his Fidelity 401(K) account because wife explicitly asked for only 50% of the present value of that account. Alternatively, he argues that Code § 20-107.3(G)(1) prohibits an award of more than 50% of the marital share of a deferred compensation plan. We agree that the trial court improperly awarded wife a greater share of the present value of the Fidelity 401(K) account than she expressly requested.[1]

It is axiomatic that a court may generally not award more relief to a party than expressly requested by the party. See Irwin v. Irwin, 47 Va. App. 287, 298 n.10, 623 S.E.2d 438, 444 n.10 (2005) ("Courts can only grant relief requested.") (citing Wilson v. Wilson, 25 Va. App. 752, 761, 492 S.E.2d 495, 499 (1997) (noting that "[r]elief of any type will only be granted when a party specifically requests [that] relief" and that "no court can base its judgment . . . upon a right which has not been pleaded or claimed.")); see also Gaymon v. Gaymon, 258 Va. 225, 234, 519 S.E.2d 142, 147 (1999) (limiting the relief granted on appeal to the specific relief requested by appellant); Carter v. Lambert, 246 Va. 309, 313, 315, 435 S.E.2d 403, 405, 406 (1993) (reducing the jury's

---

[1] Because we conclude the trial court abused its discretion in awarding wife more of the value of husband's Fidelity 401(K) account than she expressly requested, we do not reach husband's alternative claim that the court's award of more than 50% of the value of that account violated the provisions of Code § 20-107.3(G)(1).

verdict to match the lower amount of relief the plaintiff ultimately requested at trial); Johnson v. Buzzard Island Shooting Club, Inc., 232 Va. 32, 36, 348 S.E.2d 220, 222 (1986) ("The only limitation placed on a grant of general relief is that it not be inconsistent with the . . . relief specifically sought."); Brown v. Brown, 5 Va. App. 238, 245, 361 S.E.2d 364, 368 (1987) (holding that the wife's counsel's statement to the trial court that the wife was "not seeking spousal support" and the wife's reiteration of that position "[d]uring her testimony" constituted a waiver of the wife's right to any spousal support); Commonwealth v. Brown, 8 Va. App. 41, 46, 378 S.E.2d 623, 626 (1989) (Cole, J., dissenting) ("Because the trial court's opinion letter . . . exceeded the relief requested, it was void . . . ."); M.E.D. v. J.P.M., 3 Va. App. 391, 395, 405-07, 350 S.E.2d 215, 218, 224-25 (1986) (reversing the trial court's visitation award on the ground that, among other things, it was "overbroad" because it exceeded the scope of the visitation specifically sought by the father); cf. Adams Outdoor Adver., Inc. v. Bd. of Zoning Appeals, 261 Va. 407, 414, 544 S.E.2d 315, 319 (2001) (holding that the scope of the relief potentially available to the appellant was limited to "precisely the nature of the relief [the appellant's] counsel told the [Board of Zoning Appeals] his client was seeking"). The underlying purpose of this principle is to protect, in the interest of fairness and due process, the opposing party's right to address the propriety of the relief granted. See Wilson, 25 Va. App. at 761, 492 S.E.2d at 499 (noting that the failure "'to give notice to the opposing party'" of the relief granted constitutes a denial of "'the most rudimentary due process safeguards'" (quoting Hur v. Virginia Dep't of Social Services Div. of Child Support Enforcement ex rel. Klopp, 13 Va. App. 54, 62, 409 S.E.2d 454, 459 (1991))).

In Irwin, following the wife's filing of a bill of complaint for divorce, the parties entered into a property settlement agreement in January 2004. 47 Va. App. at 290, 623 S.E.2d at 439-40. The parties' agreement provided that the husband's pension, which the husband was already receiving, would "be split equally between the parties." Id. at 290, 623 S.E.2d at 440. In April

2004, the trial court entered a final decree incorporating the parties' agreement. Id. However, the wife did not start receiving her share of the pension payments until after a QDRO was approved and entered by the court in September 2004. Id. at 291, 623 S.E.2d at 440. The wife subsequently "asked the [trial] court to order [the] husband to pay her the accrued amount of one-half of the pension payments from the date of entry of the final decree," id., but the court denied the wife's request, id. at 292, 623 S.E.2d at 441. On appeal, we reversed the trial court's ruling. Id. at 297, 623 S.E.2d at 443. However, we also held that, having expressly sought recovery of the accrued pension payments only from the date of entry of the final decree, rather than the date of execution of the parties' agreement, the wife waived her right to any payments that accrued prior to the entry of the decree. Id. at 295 n.5, 298, 623 S.E.2d at 442 n.5, 443-44. We further held that, because she expressly agreed "[i]n her testimony before the [trial] court . . . that [the] husband [was] entitled to a credit for the spousal support he paid after entry of the final decree," the wife relinquished her entitlement to an equivalent portion of the accrued pension payments. Id. at 298, 298 n.10, 623 S.E.2d at 444, 444 n.10.

In this case, wife filed a bill of complaint that included a general request for equitable distribution of the parties' marital property. However, she did not identify the specific nature of her request with respect to husband's Fidelity 401(K) account until the evidentiary hearing. When asked at the hearing how she wanted the trial court to distribute the present value of the 401(K) account, she responded that she "want[ed] half of" it. In her written closing argument, wife reiterated her position as follows:

> Lastly, the Court must consider the Fidelity investment account. [Wife] presented evidence that it had a current value of $77,551.99. It is uncontested that this property is entirely marital and subject to equitable distribution. [Wife] would request that the Court award her 1/2 half [sic] the present value, or $38,775.50.00 [sic].

Implicitly stipulating to wife's request for 50% of the present value of his Fidelity 401(K) account, husband did not challenge that request in his written closing argument. The trial court then granted wife 65% of the present value of the 401(K) account.

It is clear that, in explicitly seeking only half of the present value of the Fidelity 401(K) account, wife effectively limited the scope of her request for relief and, thus, waived her right to any more of the present value of the 401(K) account than she expressly sought. See Irwin, 47 Va. App. at 298, 623 S.E.2d at 443-44 (holding that the wife waived her right to receive more relief than she expressly requested); Brown, 5 Va. App. at 245, 361 S.E.2d at 368 (holding that, having informed the trial court at a hearing that she was not requesting spousal support, the wife waived her right to subsequently receive any such support). To hold otherwise would have the effect of depriving husband of the opportunity to fairly defend against an award for which, given the limited scope of wife's express request for relief, he had no notice.

Accordingly, we hold, as a matter of law, that, having expressly requested only 50% of the present value of husband's Fidelity 401(K) account, wife relinquished any claim to more than 50% of the present value of that account. Therefore, to the extent it exceeded the bounds of the relief expressly requested by wife, the trial court's *sua sponte* award to wife of 65% of the present value of the 401(K) account constituted an abuse of the court's discretion.[2] Hence, we reverse the equitable distribution award and remand for reconsideration in view of our holding.

Although we remand the equitable distribution award for reconsideration, we will address the remainder of husband's related claims of error as the issues presented therein will presumably arise again on remand.

---

[2] This decision is not intended to preclude or otherwise limit the trial court's equitable distribution of the overall value of the parties' marital assets. It only precludes the trial court from awarding wife more than 50% of the present value of husband's Fidelity 401(K) account.

B. Distribution of the Overall Value of the Marital Assets

Husband also contends the trial court erred in awarding wife 65% of the overall value of the marital assets. Specifically, he argues that "the consideration of the factors [set forth in Code § 20-107.3(E)] compels the conclusion that the only appropriate distribution of the marital property is an equal division." We disagree.

Although the trial court must consider all factors set out in Code § 20-107.3(E), it "need not quantify or elaborate exactly what weight was given to each of the factors" as long as its "findings . . . [are] based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). "Code § 20-107.3 contains no presumption favoring equal division of marital property." Aster v. Gross, 7 Va. App. 1, 8, 371 S.E.2d 833, 837 (1988); see Robbins v. Robbins, 48 Va. App. 466, 480, 482, 632 S.E.2d 615, 622, 623 (2006) (noting that, in dividing marital assets, the trial court "need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines" and affirming the trial court's use of "a 65/35 division of assets"). "Moreover, in reviewing an equitable distribution award, we rely heavily on the trial judge's discretion in weighing the particular circumstances of each case. Only under exceptional circumstances will we interfere with the exercise of the trial judge's discretion." Aster, 7 Va. App. at 8, 371 S.E.2d at 837 (citation omitted). Indeed, "[u]nless it appears from the record that the trial judge has not considered or has misapplied one of the statutory mandates, this Court will not reverse on appeal." Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989).

Here, the trial court specifically addressed each of the factors set forth in Code § 20-107.3(E) and expressly based its decision to award wife 65% of the overall value of the marital assets upon them. The court focused in particular on the monetary and nonmonetary

contributions of each party to the well-being of the family, the physical conditions of the parties, and the debts and liabilities of the parties.

Viewed in the light most favorable to wife, the evidence supported the trial court's decision. The evidence established that, although husband was "the primary breadwinner" for the family, wife's nonmonetary contributions to the family far exceeded those made by husband. In addition to serving as the primary caretaker for the parties' daughter and home throughout the marriage, wife also cared for husband's "ailing parents while they lived in the marital residence," enabled husband to obtain a college degree during the marriage, and managed the household while husband was "away from home for extended periods." The evidence also established that, while both parties were in their early fifties at the time of the evidentiary hearing and husband was in good physical condition, wife suffered from fibromyalgia, rheumatoid arthritis, high blood pressure, and fatigue. The evidence further established that, following the parties' separation, wife had insufficient funds to meet her and the daughter's necessary expenses and had to obtain nearly $30,000 in loans and take on "charge account debts" as a result. She also incurred over $39,000 in attorney's fees and costs in pursuing the divorce. Conversely, as the trial court noted, "[n]o evidence was presented as to the debts and liabilities of [husband]."

Based on this evidence and the trial court's appropriate application and consideration of the Code § 20-107.3(E) factors, we cannot say the court abused its discretion in awarding wife 65% of the overall value of the marital assets.[3]

### C. Classification of the Sailboat

Husband further contends the trial court erred in classifying the Hunter sailboat, which was titled in his name, as marital property. He argues there was insufficient evidence presented

---

[3] This decision "does not preclude the [trial] court from reexamining the division issue on remand." Robbins, 48 Va. App. at 482 n.9, 632 S.E.2d at 623 n.9.

- 9 -

"to subject the boat to equitable distribution" and, thus, "the property should follow the title in which it is held."[4] We disagree.

"[E]quitable distribution deviates from traditional views of property ownership in that 'whether the property is separate or marital is determined by the statutory definition and is not determined by legal title.'" Robinson v. Robinson, 46 Va. App. 652, 661, 621 S.E.2d 147, 152 (2005) (en banc) (quoting Lightburn v. Lightburn, 22 Va. App. 612, 616, 472 S.E.2d 281, 283 (1996)). Pursuant to Code § 20-107.3, "[p]roperty acquired during the marriage is presumptively marital, unless shown to be separate property." Id. at 662, 621 S.E.2d at 152. "The party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." Stroop v. Stroop, 10 Va. App. 611, 615, 394 S.E.2d 861, 863 (1990). "Also, because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Robinson, 46 Va. App. at 661, 621 S.E.2d at 151.

Here, the evidence established that the parties purchased the sailboat during the marriage using marital funds. Thus, the sailboat was presumed to be marital property and husband had the burden of producing evidence to show the sailboat was his separate property. Husband, however, presented no evidence regarding the sailboat.

---

[4] Husband also argues in his appellate brief that, even if this Court determines the boat was marital property subject to equitable distribution, wife was entitled to only half of its value because she expressly requested only 50% of it. Because this argument is beyond the scope of the relevant question presented—namely, "Did the trial court err when it *classified* the Hunter Sailboat as marital property . . . ?" (emphasis added)—and was not presented to the trial court, we will not consider it on appeal. See Cirrito v. Cirrito, 44 Va. App. 287, 309, 605 S.E.2d 268, 278 (2004) (holding that we will not consider an "argument [that] is not part of the questions presented that were designated for appeal"); Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("The Court of Appeals will not consider an argument on appeal [that] was not presented to the trial court.").

Accordingly, we reject husband's contention that the trial court erred in classifying the sailboat as marital property.

## III. SPOUSAL SUPPORT

Husband contends the trial court erred in awarding wife spousal support in the amount of $3,110 per month. He argues that the award is excessive and that the trial court's reliance, in making that award, on wife's ill health is unsupported by credible evidence. We disagree.

"'Whether and how much spousal support will be awarded is a matter of discretion for the trial court.'" Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002)). "In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award, but it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). However, "the trial court's findings 'must have some foundation based on the evidence presented.'" Id. (quoting Woolley, 3 Va. App. at 345, 349 S.E.2d at 426). "Where the evidentiary foundation exists and the record discloses that the trial court 'has given due consideration to each of [the statutory] factors,' we will not disturb its determination as to spousal support on appeal." Id. (quoting Thomasson v. Thomasson, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983)). In reviewing the trial court's spousal support award, we view the evidence and all reasonable inferences flowing from the evidence in the light most favorable to wife as the party prevailing below. Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002).

Here, in considering wife's request for permanent spousal support, the trial court addressed the factors set forth in Code § 20-107.1(E) and expressly based its decision to award

wife $3,110 per month upon them. In considering the relative needs and abilities of the parties, the court addressed wife's documented expenses and noted that husband "presented little to no evidence as to his expenses." The court also found that husband's gross income was $9,332 per month[5] and that wife had no income. Finding that wife's physical condition rendered her unemployable, the court declined to impute income to wife.

Contrary to husband's assertion, credible evidence supports the trial court's finding that wife is unemployable. Indeed, wife's testimony established that she suffered from several maladies at the time of the hearing, including fibromyalgia and rheumatoid arthritis. According to wife, the fibromyalgia affected her "on a daily basis" and caused "severe muscle spasms," irritable bowel, headaches, and general pain. She also testified that the fibromyalgia affected her sleep patterns and resulted in chronic fatigue. The pain and fatigue were "so bad," wife testified, that she could no longer work. It was "sometimes difficult to get up and even walk," she stated. Wife further stated that, due to the rheumatoid arthritis, she suffered severe sciatic pain, which also made it very difficult to walk at times, and had difficulty gripping and lifting things because of the deterioration in her hands. Wife further testified that she had high blood pressure and continued to suffer ill effects from the chemotherapy she underwent for breast cancer.

The trial court could properly conclude from this credible evidence that wife's ill health rendered her unable to work. Hence, we cannot say the trial court erred in so concluding. Nor can we say, given the wide disparity between the parties' respective incomes, that the court's award of $3,110 per month in spousal support was excessive, as a matter of law.

We hold, therefore, that the trial court did not abuse its discretion in awarding wife $3,110 per month in spousal support.

---

[5] Husband does not dispute this finding on appeal.

- 12 -

However, where, as here, the "equitable distribution award is reversed on appeal and 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings.'" Robinson, 46 Va. App. at 671, 621 S.E.2d at 156 (quoting McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985)); see also Code § 20-107.1(E)(7) and 20-107.1(E)(8). Accordingly, because we reverse the equitable distribution award and remand for reconsideration, we further direct the trial court, on remand, to reconsider the issue of spousal support.

## IV.  APPEAL BOND

Husband contends the trial court erred in failing to order the return of the cash bond he posted as a condition of his appeal from the juvenile and domestic relations district court. We agree.

At the evidentiary hearing before the trial court, husband testified that he posted a cash bond in connection with his appeal of the child support rulings of the juvenile and domestic relations district court. See Code §§ 16.1-296(H) and 16.1-108. He again addressed that bond in his written closing argument as follows:

> This issue comes to this Court on an appeal *de novo* from the Juvenile & Domestic Relations Court of Stafford County wherein [wife] was granted legal & physical custody of the parties' daughter and after establishing support arrearages. [Wife] did not provide evidence of arrearages in this Circuit Court. Therefore, [husband] moves this Court to make a finding that there is no child support arrearages and dismiss the same with instructions to the Clerk to return [husband's] financial bond previously posted as a condition of the appeal.

In its letter opinion, the trial court noted that it had "dealt with all of the issues raised by [husband] in his appeal . . . from the prior rulings of the Stafford JDR Court." The court made no findings that husband owed any child support arrearages. Indeed, the court specifically stated in

- 13 -

the final decree that no arrearages existed at that time. However, the trial court failed to authorize the return of husband's appeal bond.[6]

Accordingly, we reverse and remand this matter to the trial court with instructions to provide for the return of husband's cash bond.

## V.  CONCLUSION

For these reasons, we affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand for further proceedings consistent with this opinion.

<u>Affirmed, in part, and reversed and remanded, in part.</u>

---

[6] Although the record provided us is silent as to the current location of the posted cash bond, we may reasonably infer that it was properly transmitted from the clerk of the juvenile and domestic relations district court and is being held by the clerk of the trial court. <u>See</u> Code § 16.1-108.

- 14 -